UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SHAHAB AFNANI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:18-cv-554 (TSE/IDD) |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

This matter is before the Court on the parties' cross-motions for summary judgment. (ECF Nos. 17, 22). Pursuant to 42 U.S.C. § 405(g), Shahab Afnani ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying his claim for a waiver of an overpayment of Social Security disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). 42 U.S.C. § 404(a). For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Summary Judgment (ECF No. 17) be **DENIED in part**, the decision of the Commissioner be **VACATED**, and the case be **REMANDED** for further review.

### I.  PROCEDURAL BACKGROUND

Plaintiff began receiving DIB on May 30, 2010. Administrative Record ("R.") 41. Plaintiff received $27,716.00 for May 2009 to April 2010, and received a monthly payment of $2,313.00 beginning in June 2010. R. 41. However, on January 12, 2012, the Social Security Administration ("Administration") issued a notice to Plaintiff informing him that he no longer qualified for DIB because he engaged in substantial gainful activity ("SGA") in November

1

2008—the month he became entitled to benefits—and the decision allowing benefits was incorrect. R. 56.

On July 31, 2012, Plaintiff requested a wavier of overpayment, stating that he was not at fault in causing the overpayment and cannot afford to pay back the money.[1] R. 67. After a personal conference with the Administration, Plaintiff's waiver request was denied on July 11, 2013. R. 100-01. Plaintiff then filed a request for a hearing in front of an Administrative Law Judge ("ALJ") on November 7, 2013. R. 118. On June 10, 2016, a hearing was held before an ALJ and on September 21, 2016, the ALJ issued a decision denying Plaintiff's waiver request. R. 30-33, 473-514. The ALJ found Plaintiff liable for the overpayment amount of $74,150.10. R. 473-514.

On October 3, 2017, the Appeals Council for the Office of Disability and Adjudication denied Plaintiff's request for review of the ALJ's decision, rendering the ALJ's decision the final decision of the Commissioner for purposes of review under 42 U.S.C. § 405(g). R. 5-8. Having exhausted his administrative remedies, Plaintiff filed the instant suit challenging the ALJ's decision on May 10, 2018. Compl., ECF No. 1. This matter is ripe for disposition because the parties filed cross-motions for summary judgment and waived oral argument.

## II. FACTUAL BACKGROUND

Plaintiff applied for DIB on July 22, 2009, alleging disability as of November 19, 2008. R. 34-38. Plaintiff worked for the Federal Reserve Board of Governors ("Federal Reserve") from November 1988 to November 2008. R. 36. In his DIB application, Plaintiff indicated that he received short term disability after he stopped working and earned $17,000 in 2008 and $14,000 in 2009 from the sale of two homes. R. 38. Plaintiff also indicated in his DIB application that he

---

[1] The Administrative Law Judge's decision states that Plaintiff filed the waiver request on January 19, 2012, however, the record does not reflect that date.

2

was not self employed in 2008 or 2009, that his total earnings in 2008 was $116,600.00, and that he did not have any earnings for 2009. R. 36.

On May 24, 2010, Plaintiff was found to be disabled as of November 19, 2008 and his DIB application was granted. R. 41. Plaintiff was entitled to benefits beginning in May 2009, back benefits for $27,716.00, and monthly benefits of $2,313.00 beginning in May 2010. R. 41.

On March 29, 2011, the Administration sent Plaintiff a letter requesting more information about his work because additional information appeared on Plaintiff's social security record. R. 44-46. Specifically, the Administration discovered that Plaintiff earned $102,000.00 in 2008, $51,818.76 in 2009, and $955.07 in 2010 from the Federal Reserve. R. 45. Plaintiff responded to the Administration's inquiry on April 6, 2011, and explained that the earnings in 2008 were his salary prior to his disability, the 2009 earnings were his long term disability insurance benefits, and the 2010 earnings were his vacation pay. R. 46, 51. Plaintiff also provided a Work Activity Report (Self Employed Person) and indicated that he earned the following income for October to December 2008 and 2009:

|  | Gross Income | Net Income |
|---|---|---|
| October 2008: | $679 | $679 |
| November 2008: | $679 | $679 |
| December 2008: | $679 | $679 |
| October 2009: | $652 | $652 |
| November 2009: | $652 | $652 |
| December 2009: | $652 | $652 |

R. 52. Plaintiff stated that he is the sole owner of a real estate business and used to be a realtor and a real estate investor that purchased homes and earned commission by either selling the

3

homes or leasing homes and selling them at a later date. R. 52. At the time that Plaintiff submitted the Work Activity Report, Plaintiff stated that he no longer invests in homes and his real estate activities have been reduced to two to three hours per week. R. 52. Plaintiff signed this form, acknowledged that a false statement or misrepresentation of a material fact is punishable under federal law, and affirmed that the answers on the form were true. R. 54.

On January 12, 2012, the Administration notified Plaintiff that he was not qualified for DIB because he began doing SGA in November 2008. R. 56. Plaintiff was given ten days to respond. R. 56. On May 1, 2012, Plaintiff requested a waiver for DIB overpayment. R. 67-74. In his Request for Waiver of Overpayment Recovery or Change in Repayment Rate form, Plaintiff stated that he notified the Administration of his real estate commission in his SSA-820 form. R. 68. He also indicated that he is employed with National Realty in Reston, Virginia, with a net pay of $350.00 monthly and also receives $3,586.00 for his pension from the Federal Reserve. R. 71. Thus, his total monthly income was $3,936.00. R. 71. Plaintiff explained that there were only seven months in which his net self-employment income exceeded the Administration's "maximum income:" July, October, and November 2009, and April, May, July, and September 2011. R. 73-74. Plaintiff provided the Administration with his Income Tax Return forms for 2008 and 2009. R. 99.

On July 16, 2013, after attending a personal conference, the Administration denied Plaintiff's request for an overpayment waiver. R. 91-101. The Administration found that Plaintiff was at fault for creating the overpayment because he did not accurately report his self-employment earnings from his real estate business. R. 98-101. Plaintiff was found to have omitted his gross income from 2008 and 2009 on his Work Activity Report. R. 99. Based on information obtained by the Office of Inspector General, Plaintiff earned $14,400.00 in June

4

2009, $1,410 in September 2009, and $16,738 in November 2009 in real estate commission. R. 100. Further, the Administration found that Plaintiff was working above the SGA level that qualifies for DIB. R. 101. On November 7, 2013, Plaintiff requested a hearing before an ALJ. R. 118.

A. **Administrative Hearing Testimony**

On June 10, 2016, Plaintiff testified before the ALJ. R. 473-514. Plaintiff testified that he engages in realty as something to keep himself busy, not as something he does for a living. R. 481. Plaintiff testified that he is currently working at Leesburg Imports and prior to that he was working at CarMax. R. 489. Between November 2008 and July 2011, Plaintiff received retirement benefits from the Federal Reserve. R. 499.

Plaintiff began pursuing the real estate business because pamphlet materials that he received from the Administration encouraged part-time work and he was never told that working part-time would impact his benefits. R. 482. Plaintiff first began working as a realtor about two to three hours a week and then the hours increased to five to six hours a week. R. 482, 485. In response to the ALJ's question of how much money he made per week or per month, Plaintiff pointed to his 2008 and 2009 tax returns and stated that he took an average of the total amount which came to $825 per month in 2008 and $651 per month in 2009. R. 483.

Plaintiff testified that he did not earn any real estate wages in November 2008 and that he started earning such wages in 2009. R. 484. He explained that the amounts on the Work Activity Report are wages earned prior to his disability. R. 484. Plaintiff merely divided the earned wages in 2008 into twelve months and reported it in this manner. R. 485. Plaintiff used this method for his 2009 income reporting and earned about $651.75 per month for 2009. R. 485. Plaintiff testified that he included his son's income from work on a website on his tax return. R. 485.

5

Plaintiff explained that the income he received in 2009, in the amount of $51,000.00, was disability income from the Federal Reserve. R. 488.

Plaintiff testified that he is requesting a waiver of overpayment because he was not at fault. R. 490. Plaintiff argued that the remarks section of the DIB application indicates that he reported self-employment income for 2008 and 2009, and, therefore, the Administration should have seen it. R. 491. Plaintiff explained that the real estate commissions of $17,000 received in 2008 and the $14,000 received in 2009 is "clearly identified on the form." R. 491. Plaintiff reported these commissions as gross income not net income because he did not know how to report it. R. 496-97. If you take the net income of these commissions, Plaintiff argued, they are under the SGA limit. R. 497. Plaintiff stated that he was never informed that his net commission income was above the SGA limit. R 497.

Plaintiff also argued that the Administration did not provide him with any information of the "impact of returning to work, about discontinuing benefits if I were into real estate activity even on a limited basis." R. 492. Plaintiff contended that the Administration ignored the "going back to work" provision and did not tell him that he could not return to real estate work on a limited basis. R. 492.

When asked what Plaintiff used the DIB money for, Plaintiff testified that he used it for his daily expenses, such as the mortgage, insurance, car, *etc*. R. 493. Plaintiff stated that if he "had the money, I would have given it [back]." R. 494.

**B.    ALJ's Findings**

In accordance with the above, the ALJ made the following findings of fact and conclusions of law. First, Plaintiff was overpaid benefits in the amount of $74,150.10 during the period of May 2010 to December 2011. R. 31. Second, Plaintiff was at fault in causing the

overpayment. R. 32. In his July 22, 2009 application for DIB, Plaintiff stated that he was not self-employed in 2008 or 2009 and he earned $0 in 2009. R. 32. However, the ALJ found Plaintiff's earning record revealed self-employment earnings of $8,139 in 2008 and $7,821 in 2009. R. 32. The ALJ found that because Plaintiff failed to accurately report his income, recovery of the overpayment is not waived, and Plaintiff was liable for repayment of $74,150.10. R. 32.

C.  **Cross-Motions for Summary Judgment**

Plaintiff argues that summary judgment is warranted because there is no genuine issue of material fact. This is not the standard of law applied to a review of the Administration's final decision, therefore, the Court will attempt to construe Plaintiff's argument as errors in the ALJ's findings.

Plaintiff first claims that the ALJ erred in finding that he did not accurately report his income. Plaintiff argues that he accurately reported he had no income from real estate in the years when he signed and submitted Federal Reserve's and Aetna Life Insurance Co.'s ("Aetna") questionnaires in 2009 and 2011. He also reported to Sarah Biermann, Claimant Representative for Allsup, LLC, who submitted Plaintiff's Social Security Benefits application, that he received commission in 2008 and 2009 from the sale of two homes. Plaintiff further asserts that he noted in the remarks section of his DIB application that he received $17,000 in 2008 and $14,000 in 2009 from the sale of two homes. Second, Plaintiff contends that the ALJ erred by finding that Plaintiff received income during his disability period. Plaintiff states that he did not have any income from his real estate activities because he had a net loss that caused his total net income to fall below the SGA level of $980 per month. Third and finally, Plaintiff argues that the time in which he received a gross income over $1,000 qualified as a trial work period and should not be

calculated in the overpayment. Therefore, the ALJ erred in finding that Plaintiff is not entitled to a waiver of overpayment.

Defendant argues that Plaintiff was not entitled to DIB payments because he performed SGA in 2009. Defendant asserts that Plaintiff cannot offset realty income with self-employment losses from another business and he cannot aggregate his gains and losses over a three-year period. Further, Defendant contends that Plaintiff is at fault because he made incorrect statements on his DIB application, the statements made on the Federal Reserve and Aetna application are irrelevant, and Plaintiff relies on documents that were not submitted to the ALJ and has not satisfied the *Borders* standard for introducing new evidence. *See Borders v. Heckler*, 777 F.2d 954 (4th Cir. 1985) (superseded by amendment to statute).

At this juncture, the undersigned addresses Plaintiff's first claim—that the ALJ erred in finding that Plaintiff did not accurately report his income—as meritless. The undersigned declines to address Plaintiff's second and third claim because the matter should be remanded to the Administration for reconsideration before ruling on these arguments.

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, this Court is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is more than a mere scintilla but less than a preponderance of the evidence. *Craig*, 76 F.3d at 589. An ALJ is required to

analyze all relevant evidence and sufficiently explain his or her findings. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997). In reviewing the record for substantial evidence, the court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). The Commissioner's factual findings, if supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390. If the ALJ's determination is not supported by substantial evidence in the record, or if the ALJ has made an error of law, the district court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Fourth Circuit applies a harmless error analysis in the context of social security disability determinations. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir.2015); *Hammond v. Colvin*, No. 1:12-CV-01177(AJT), 2013 WL 5972432, at *6 (E.D.Va. Nov. 8, 2013). The harmless error doctrine prevents a remand when the ALJ's decision is "overwhelmingly supported by the record though the agency's original opinion failed to marshal that support" and a remand would be "a waste of time." *Williams v. Berryhill*, No. 1:17-CV-167(TCB), 2018 WL 851259, at *8 (E.D. Va. Jan. 18, 2018) (citing *Bishop v. Comm'r of Soc. Sec.*, 583 Fed.Appx. 65, 67 (4th Cir. 2014) (per curiam)). An ALJ's error may be deemed harmless when a court can conclude on the basis of the ALJ's entire opinion that the error did not substantively prejudice the claimant. *See Lee v. Colvin*, No. 2:16-CV-61(RJK), 2016 WL 7404722, at *8 (E.D. Va. Nov. 29, 2016). When reviewing a decision for harmless error, a court must look at "[a]n estimation of the likelihood that the result would have been different." *See Morton-Thompson v. Colvin*, No. 3:14-CV-179(REP), 2015 WL 5561210, at *7 (E.D. Va. Aug. 19, 2015) (citing *Shineski v. Sanders*, 556 U.S. 396, 411–12 (2009)).

## IV. ANALYSIS

The Act requires the Commissioner to recover payments in excess of the correct amount of Title II benefits. 42 U.S.C. § 404(a)(1)(A); 20 C.F.R. § 404.501(a). The Act further provides that no recovery will be made from a person who is without fault if either (1) recovery would defeat the purpose of Title II, or (2) recovery would be against equity and good conscience. 42 U.S.C. § 404(b). The recipient of overpayment bears the burden of showing that the recovery of overpayment should not occur. *Kendrick v. Califano*, 460 F.Supp. 570 (E.D. Va. 1978) (citing *Sierakowski v. Weinberger*, 504 F.32d 831, 836 (6th Cir. 1974)).

### A. Plaintiff's claim that the ALJ erred when he found that Plaintiff did not accurately and completely report that he had no income is without merit because it is not relevant to the Administration's decision of whether to approve or deny benefits.

Plaintiff claims that he accurately reported that he had no income from his real estate business in the years when he signed and submitted the Federal Reserve's and Aetna's questionnaires in 2009 and 2011, and that he reported to Ms. Biermann that he received commission in 2008 and 2009 from the sale of two homes. Plaintiff also asserts that he reported the commission received in 2008 and 2009 in the remarks section of his DIB application. Therefore, Plaintiff claims that the ALJ's finding that he did not report his income is unfounded. The Court, however, finds that Plaintiff's argument is without merit.

Plaintiff's argument is meritless because it is irrelevant whether or not Plaintiff reported certain amounts or omitted certain amounts of income in his questionnaires and applications to other entities besides the Administration. The crux of this matter is whether Plaintiff reported these amounts in his DIB application. It is the DIB application that the Administration refers to when determining whether to provide benefits. Information reported to other entities is not relevant to the Administration's determination. Also, although it is true that Plaintiff reported his

commission that he received in 2008 and 2009 in the remarks section of the DIB application, which the Administration may have overlooked, the regulation provides that an individual is not relieved of liability for overpayment when the Administration may have been at fault in making the overpayment. *See* 20 C.F.R. § 404.507. Therefore, Plaintiff's argument that the ALJ erred in finding that he failed to report his income is unconvincing. Plaintiff's request for summary judgment is denied on these grounds.

### a. Exhibits attached to Plaintiff's brief to support his first claim shall not be considered by this Court and are not part of the record.

In order for new evidence to be included as part of the record, under 42 U.S.C. § 405(g), a party must show that the new evidence is material and there is good cause for the failure to incorporate such evidence in the record. *See generally Borders*, 777 F.2d 954 (superseded by amendment to statute) (holding that a reviewing court may remand a case if four conditions are met: (1) the evidence must be relevant to disability and not merely cumulative; (2) the evidence must be material; (3) claimant must be able to show good cause for submitting the evidence late; and (4) claimant must make a general showing of the nature of the evidence to the reviewing court). Plaintiff attached new documentation, specifically Exhibit 2 (2010 and 2011 Schedule C form only) through Exhibit 8 (ECF Nos. 17-3 to 17-9), to substantiate his argument that he accurately reported his income. However, as Defendant correctly points out, such documentation should not be considered part of the record.

Plaintiff has failed to demonstrate that the new evidence is material and there is good cause for the failure to include it in the record. The evidence is not material simply because it may support Plaintiff's contention that he reported his income accurately on other applications besides the DIB application. The Court previously found that income reported other than on the DIB application irrelevant for purposes of an overpayment determination. Even if Plaintiff made

them part of the record previously, they would not alter the administrative outcome because the ALJ based his findings on information reported to the Administration, not information reported to other entities. Such information would have been irrelevant to the ALJ. Plaintiff also failed to provide good cause as to why the new evidence was not included in the record. In fact, Plaintiff makes no argument at all regarding the inclusion of new evidence. Therefore, Exhibit 2 (2010 and 2011 Schedule C form only) through Exhibit 8 attached to Plaintiff's brief (ECF Nos. 17-3 to 17-9) are not considered by the Court and are not part of the administrative record.

### B. Remand is appropriate because the ALJ's ruling omits consideration of Plaintiff's age, intelligence, and any physical, mental, educational, or linguistic limitations, and makes no credibility finding when determining fault.

"In determining whether the claimant is at fault, the [Administration] will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, education, or linguistic limitations (including lack of facility with the English language) the individual has." 20 C.F.R. § 404.507. An incorrect statement made by the claimant which he knew or should have known to be incorrect constitutes fault. *Id.* To determine whether Plaintiff was at fault, the ALJ was required to apply these legal requirements to the record evidence. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

Remand is appropriate in this case because the ALJ did not adequately develop the record concerning Plaintiff's age and intelligence, and any physical, mental, education, or linguistic limitations as required by 20 C.F.R. § 404.507.[2] Based on the ALJ's ruling, this Court cannot

---

[2] Although Plaintiff did not argue this point in his opening brief, the Court finds that it is appropriate to raise the issue *sua sponte*. *Ricks v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 142966, at *22 (E.D. Va. Dec. 29, 2010). *See*

determine whether these factors were taken into account in determining whether Plaintiff was at fault because the ALJ does not reference them in his findings or conclusions. Such an error is not harmless because there is a likelihood that the result would have been different if Plaintiff had any intelligence, mental, physical, educational, or linguistic limitations that may have impacted his ability to understand how, where, and in what manner to report certain income. If, for example, Plaintiff had a linguistic limitation, then this could explain why Plaintiff may not have reported his income correctly or accurately on his DIB application. *See* R. 496-97 (testifying that he did not know how to report his real estate commissions). Without knowing whether these factors impacted the ALJ's determination of fault, this Court cannot conclude that the decision was based on substantial evidence. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law.").

Additionally, the Court finds that a credibility determination should have been made because the ALJ alludes to a conclusion that Plaintiff was at fault because he knew or should have known that he made incorrect statements in his DIB application. Drawing conclusions on Plaintiff's state of mind requires a credibility determination, which the ALJ did not assess. The ALJ failed to build a logical bridge to his conclusion that Plaintiff was at fault from the evidence in the record. There is no way for this Court to evaluate what weight the ALJ gave to Plaintiff's testimony. *See Barrett v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 157740, at *11 (E.D. Va. May 19, 2011) ("In determining whether the recipient of disability benefits is 'without fault' in accepting overpayments, the fact finder is solely responsible for making credibility decisions."). The ALJ merely found that indicating income from the sale of two homes in the remarks section

---

*generally Sims v. Apfel*, 530 U.S. 103, 111-12 (2000) (holding that claimants need not exhaust issues in a request by the Administration's Appeals Council in order to preserve judicial review of those issues).

of the DIB application "does not make his statement that he was not self-employed in 2008 and 2009 true." *See* R. 33. This does not explain how the ALJ determined that Plaintiff knew or should have known the statements on his DIB application were incorrect. The ALJ's credibility determination is critical to the correctness of ultimate conclusions, and a finding that Plaintiff's testimony is credible would likely satisfy the without fault prong. *Barrett*, 2011 U.S. Dist. LEXIS 157740, at *11 (referencing *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (holding that the ALJ's observations concerning these questions are to be given great weight because he had the opportunity to observe the demeanor and to determine the credibility of the claimant). Plaintiff might be entitled to a waiver of overpayment if the ALJ found him credible, which would change the result of the proceeding.

Accordingly, the Court finds that the ALJ's failure to consider Plaintiff's age, intelligence, and any physical, mental, educational, or linguistic limitations, or make a credibility determination was not a harmless error. Plaintiff was prejudiced by this omission because such assessment could have changed the result of the proceeding. The case should, therefore, be remanded so that the record includes a discussion regarding the factors outlined in 20 C.F.R. § 404.507, and any other credibility determinations that warrants a finding of fault.

## V. RECOMMENDATION

For the reasons set forth above, the undersigned Magistrate Judge recommends that Plaintiff's Motion for Summary Judgment be **DENIED in part** as to Plaintiff's first claim, the decision of the Commissioner be **VACATED**, and the case be **REMANDED** for further proceedings consistent with this report and recommendation.

## VI. NOTICE

**By mailing copies of this Report and Recommendation, the parties are notified that**

objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

    The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record.

/s/
Ivan D. Davis
United States Magistrate Judge

May 3, 2019
Alexandria, Virginia